Good morning. Jeffrey Jones for the appellant, Hong Ai Lei. I would like to reserve two minutes for rebuttal if I could, please. The sentencing guideline here for conspiracies 2X1.1, under subsection B2, requires a three-level downward adjustment where the conspirators completed all of the acts they believed necessary for the successful completion of the substantive offense. And the substantive offense here under this guideline is the substantive offense that was charged in the indictment and proven to the jury, not ancillary offenses that might have been committed at different points during the incomplete conspiracy. The substantive offense here was a robbery, a Hobbs Act robbery, of the Diamond and Flower Industries warehouse in Sacramento in the theft of computer chips from that interstate facility. What should decide this case is that the conspirators voluntarily abandoned their plan to rob that warehouse before they even got near it. They didn't try to break into it. They never approached it. Their first step of their plan was to invade a private residence of the DFI owner and force him to give them the alarm codes. Through their own inept plan, they invaded the wrong house and targeted the wrong person who didn't have the computer code, the codes for the alarm. And at that point, they abandoned their plan. There was no intervention by a third party. The authorities didn't find out about this until more than a year later when a cooperating witness told them about it. Here the conspirators simply abandoned their plan. And what's critical for this guideline is there was never a point when the conspirators believed they had completed all of the acts necessary to complete the Hobbs Act robbery. But didn't some of the conspirators get close on some of the acts? I mean, the provision that we're looking at says that the reduction applies unless the defendant or a co-conspirator completed all the acts the conspirator believed necessary on their part. So why wouldn't we say that the team that was at the house had completed their part? They were stopped by the fact that the gentleman they were attacking didn't have the codes. Well, I don't disagree with that. I'd say that if you look at a total Hobbs Act robbery, they completed the force element, and they probably completed a robbery and a number of other offenses, a burglary, an assault. But the Hobbs Act robbery required the taking of property that affects interstate commerce, and that property was sitting safely at the warehouse. So I think it would be impossible to say that any of the conspirators believed they had committed all the acts necessary when they still hadn't gotten the alarm codes, and all of them knew they had no way to enter that warehouse. And that's why they — But also, doesn't — isn't, as I read this provision, it's not whether the particular defendant or co-conspirator thought that — completed all the acts that the conspirators believed necessary, not that that defendant or co-conspirator believed necessary on their own part. So presumably, it has to be the conspiracy as a whole that believed these acts necessary on their part, meaning not on a third party's part. Mm-hmm. So I don't see how you can go conspirator by conspirator on this, because that isn't what the rule says. I agree, Your Honor. I think it's — I think it's all conspirators. But I don't think any conspirator ever believed — say, even — when I say even one conspirator, I'm thinking all the conspirators can't believe something unless at least one of them does. And I don't think any one of them believed that they had attained — that they had gotten the alarm codes. They all knew they hadn't. And they knew without the alarm The district court, as I recall, seemed to think that because there was a robbery in the home of the person they were attacking, that that was sufficient for — but that isn't the robbery that was being charged. Indeed. Right? Indeed. That was an ancillary offense. I think if you looked at the robbery of the force would have been the same for both robberies. If you were looking at the Hobbs Act robbery, I think it's fair — the USA has a fair point that the force element was satisfied when they were in the house trying to force the guy to give them the alarm codes. If they had gotten the codes, how much more difficult would this have been? They would then have had the codes to a business, and they would have been able to punch it in and just go in. If they got the right codes, they'd have to take their van to the business. Wasn't the team ready? They were right there by the — They were at a hotel. I'd say that was — I'd say getting that property in the van and escaping with the property was a key step in the robbery that they knew they never completed. What more — the group that was at the house and tortured the guy, what more would they have needed to do if they had gotten the codes? Well, they would have needed to select the correct victim in the first place. And then if they had gotten the codes, that group would have simply relayed the codes to the team that was waiting at the hotel. But it says — it says — it says the co-conspirator completed all the acts that they believed necessary on their part. So the fact that they — that their beliefs turned out not to be incorrect, you know, that they're inept. I'm just trying to figure out if, you know, if you've got two teams doing something, and the one team does everything. I'm trying — first of all, I'm trying to figure out, like, factually, what more could that team have done if they had — if they'd actually had the right person? I think they would have, I guess, made the — the one thing they didn't do was make a phone call and deliver the codes, right? That's the last step that would have — Right. The leader — the leader of the home invasion team, he went — he went to the house and realized this is the wrong guy. And then he traveled to the hotel and told the boss, Mattie Chan, boss, we screwed up. We can't do the warehouse. And then the boss called off the plan. But does the rule — does the guidelines say what Judge van Dyck just read? It says the defendant — again, the defendant or a co-conspirator completed all the acts, not that they believed necessary, but that the conspirators believed necessary on their part. Yes. Which I understand to mean the conspiracy as a whole, not these individual people. Well, let's say that a necessary act in the conspiracy — I mean, that's plural, and the part at the beginning is singular, the defendant or a co-conspirator. So, obviously, they're not talking about those people. They're talking about the larger group. Yeah. But the substantive offense here is clearly the Hobbs Act robbery that included the warehouse, taking the property from the warehouse. Even if the conspirators in the House believed they had done everything necessary for their part, they still had no reason to believe that there had been a successful taking of the computer chips from that warehouse. They wouldn't have believed that. They might have believed that — if I'm a conspirator in charge of steps one and two, I still don't believe that substantive offense has been completed until I have a reason to believe that the other conspirators have carried out steps four, five, and six. So then another way into this, another question is, I think that the government's version, and maybe the district court's, is that this — what happened here is kind of like a third-party interference, aside from how far along the events were. But was it in the sense that the reason — it isn't that this guy refused to give him the codes. It's that they completely screwed up. They had the wrong person, and this person just didn't have the codes.  And they knew — It was their mistake, their idiocy, basically. It was a very incompetent plan, and they knew it. They knew they had screwed up, and that's why they called it off before they even tried to go to the warehouse. But it wasn't as if they went there, the guy — they went to the right place, but the guy was just very firm, and he was willing to get beat up and tortured and everything, and they wouldn't give him the code. That's not what happened. Indeed. That could have been — that could be an intervention by the victim situation if he refused to give them, but they — it was their mistake. They picked the janitor instead of the owner. But does this — does this matter? Does this distinction matter? I think so, because there's two prongs in this guideline, in section — subsection B2. The first prong is — the second prong is where there's an intervention, by the police or by a victim. And many of the cases deal with that, because this case is kind of unusual that the substantive events was never completed, and the authorities wouldn't have found out about it except for the cooperating witness. Usually, in most cases, you see the police intervened or the victim intervened. And then in that situation, it's the second — it's the second prong in subsection B2. Are you saying this was not an event beyond their control because it was in their control to have made this mistake? Their plan was in their control. And their plan was the only flaw in this case. Yeah, well, why wouldn't we say what was beyond their control was the fact that the person that they had didn't know the codes? Because I think that was under their control because their plan involved selecting the right person and getting the codes from them. And that's where — that's where it fell short. They — it was their — it was entirely their plan. It wasn't an event external to the conspiracy. It was their own flawed plan. They selected their own person. Why wouldn't you say the same — I mean, I'm having trouble following why this wouldn't always be the case. You'd say, well, you incompetently picked a co-conspirator who actually is a police informant, and so that's why the police showed up when you — you know, as you were about ready to break into the building, right? You know, that — Yeah, I think in this case — in this case, though, where there's no — where there's no intervention by the police or by the victim, the question then under that first prong is did they complete all the facts they believe necessary for the completion of the substantive offense? And — So your position is just that unless it's the police or something — I mean, here, something intervened, right? Something — I mean, you could definitely characterize it as something intervening is the fact that this person you're torturing doesn't know — doesn't know the codes. So that — it was definitely something out of their control, in a sense. But — but you're just saying that's — that's different than the police showing up, and so that this could not be a prong, too? I think it is different because it's — because it's — because it's the — ultimately the conspirator's mistake that caused it. But — But — I mean, you can always characterize a — an evil scheme gone wrong as, like, you know, just not planned well enough. I think it — I think it's certainly — it's certainly fact-specific. A case — I think the closest case I saw to this question, it's United States — it's cited in the opening brief. It's United States v. Lamb, a Seventh Circuit case from 2000. And there was no police intervention, but an inept — inept burglar, he went to a bank, he went — he got to the vault, but he didn't bring the tools to break into the vault. Inept plan. That's an incomplete conspiracy. Or the substantive offense — he couldn't complete the substantive offense due to his own negligence. I think that's precisely what happened here. What — what happened specifically, as I understand it, is that they — they meant to be following and kidnapping the owner, and they just were completely — but their plan about how were they going to figure out who the owner was made no sense at all, and it wasn't the owner. They thought — they thought he was the owner. Can I ask you, going back to the first — I know you — we've taken you over your time, but we'll make sure you have some time for rebuttal. On the first part of the provision that talks about the — it says, unless the defendant or a co-conspirator completed all the acts the conspirators believe necessary on their part, how does one read this? Do we — do we read it as the conspiracy as a whole, or could you look at it in terms of essentially the links in the chain of one defendant or one co-conspirator? Because that's — that's part of the difficulty with the model of this case, where there were kind of two things that had to happen. First, we do the codes, and if we get the codes, then we go to the building. I think it's the overall conspiracy in the sense that this is a — taking a step back, this is the downward adjustment where — for a conspiracy where you didn't complete the substantive offense, and they're looking at what the conspirators thought. Hypothetically, if you had a huge drug conspiracy, and there's dozens of people, and each person has a tiny, tiny, tiny — a tiny role, well, the first person who does the first thing, transports drugs or whatever, they might think, oh, I've done everything I'm supposed to do, so we've completed it. But they haven't even gotten close to completing the substantive offense. I think you'd look at this conspiracy as a whole, and did — did the conspirators have any reason to think that the substantive event, that they had — that the conspirators as a whole had completed all of the necessary acts to complete, in this case, the Hobbs Act robbery? So what work is the phrase on their part doing under that view? I wouldn't say the defendant or co-conspirator completed all the acts the conspirators believed necessary for the successful completion of the substantive offense. It seems under that reading, what is — what work is the on their part doing? Well, I think it's — if it was — if one — if the belief of one conspirator could control that could be on his or her part, I think — I mean, this is because this is — this is a downward adjustment when — No, no, no. You could — I mean, it could be that everybody believes — you know, we have a two-part thing, and I've got to do A, and somebody else has to do B. Mm-hmm. Just two conspirators. And we both believe that I have to do A. Mm-hmm. And I do A. I complete everything that we all believe that I had to do, which is A. But B doesn't get done because the other person, you know, stops at Starbucks for coffee or something like that. So — so that — under that understanding, everybody, all the conspirators, would believe that it was necessary on my part to do A. Mm-hmm. Right? And so I completed all the acts, and then this would — this would fit. Well, I think in this case, there were a number of conspirators that — that hadn't completed their — hadn't completed the acts that — on their part. On their part — And everyone — As I understand, it means on the part of any of the conspirators as opposed to third parties. So, for example, in this instance, their scheme was dependent on getting the code. And so if — in the hypothetical, I mean, we have this other problem, which was that getting the code was pretty far away from actually committing the robbery. But leaving that out of the equation for now, if the person who actually had the code had simply refused to do it, to give it, then all — and if the object was to get the code and nothing else, then the conspirators would have completed all the acts necessary on their part, but they didn't get the code because the guy wouldn't give them the code. So I think that's what on their part means. They may be dependent on somebody else doing something. Some third party was not the conspiracy.  But that doesn't — that doesn't count. I agree with that. I think — well, in that case, you'd have the intervention — an intervention by a third party. I mean, if you took this case under its facts — Isn't the operative — I mean, it seems like maybe the belief is what's doing the work in this part of the clause. It's about believing something has happened, and it turns out maybe it has not happened.  Here, I think everybody — there was nobody who thought they'd gotten the correct alarm codes, and nobody thought that the other conspirators had even approached the warehouse, much less broken into it and stolen anything. So everybody knew that collectively they hadn't committed all the necessary acts to complete the Hobbs Act robbery. Why don't we hear Mr. Jones from your opposing counsel, and we'll see you for two minutes of rebuttal. Thank you. Thank you. Good morning, Your Honors. Jason Hitt on behalf of the United States. May it please the Court, the Court's questions, I think, hit the nail on the head. And one of the fact patterns that's unusual here is that it is not possible to break apart the two different teams. It was one unified plan. And what Martinez-Martinez says in footnote 5 in terms of who do we evaluate, it says that the Court looks at all the acts necessary, but it's all of the conspirators and what they do in executing this one unified plan. You don't break it down piece by piece or say, well, what did Mr. Lay say because he wasn't in the house. And when this plan was underway, they didn't know in the moment they had the wrong target. They got hours into the prolonged torture and beating when they realized, because they realized they had the wrong person. And what the guideline is interested in looking at, I think, based on the cases that we cite, is what the defendants believed was necessary. So they thought it was a necessary condition to harm Mr. Nguyen in order to access DFI. The guideline determines punishment based on conduct and how far they got. Many conspiracies never get off the ground. This one was well underway. It was — But they certainly didn't complete all the acts necessary for the successful completion of the substantive offense, because they never got anywhere near the robbery. But they didn't know that until roughly four hours into the torture. But they knew that they hadn't completed all the acts necessary for the successful completion of the substantive offense. They knew it at the beginning, that that whole episode was just preliminary. It wasn't — it wasn't preliminary. It was necessary. It was not ancillary. It was the whole scheme. But they didn't complete all the acts. They couldn't have. It may have been necessary, but it wasn't all the acts. That's true. It was a preliminary act. Well, it was — it was a necessary act. It was a necessary act. And it was the first phase of two steps. It wasn't all the acts. It was a sliver of the acts. In other words, what they thought they were trying to do was necessary for what they were going to do next, but it wasn't what they were going to do next. Well, in what the cases talk about, for example, in Dosen, the court talks about Judge Posner where the crew is following the truck and they're going to rob the marijuana, and they lost it in traffic. And it was held that they couldn't complete the robbery. They had taken preliminary steps. They had prepared with duct tape. They had followed the truck. They lost it in traffic. It was a factual impossibility once they lost it in traffic to complete all of the necessary steps. But it doesn't follow that the three-level discount is applied where the factual impossibility here that Mr. Nguyen was the wrong victim ends up being true. They don't know that. And when you're assessing the conduct for the conspiracy that occurred and was proven in this case, the three-level discount really doesn't make much sense given the nature and conduct. There's sort of two parts to this provision, right? There's a second part that says that if the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption, do you contend that that part of the clause is met here? I believe both are met, Your Honor. Okay. So why is the second one met? Because the way the courts have interpreted that second clause is they focus on event beyond their control. And so in Dawson, Martinez, and Chap Delane, all of those are event beyond defendant's control. So in Dawson, that's the loss of the truck in traffic. Martinez is a Tenth Circuit case where the bank president and kidnapper couldn't open the safe combination. And then Chap Delane is a First Circuit case where the robbers arrived to carry out a bank robbery, but they were thwarted only by the unexpected early departure of the Wells Fargo truck. I mean, the argument sort of suggested that maybe this was within their control because it was their own ineptitude that chose the wrong person. I don't think that can be accurate under the way the guideline is written. So event beyond their control, it would mean that they had to know in advance that they had the wrong person. And it would make no sense. Why would they have to know in advance? Because the idea would be if the event is beyond their control and it's a bad plan, then he gets a discount. They don't know in the moment. Well, it was a bad plan because apparently they thought that they were going to figure out who the owner was by who left the factory last. And that's why they chose this guy. That was a pretty bad plan. Well, it turned out to be a terrible plan, but it was one that they had executed multiple times and had success in other robberies.  It was still the result of the bad plan and why the whole thing didn't work. But they don't know it's a bad plan at the time they executed it. That's something beyond their control. It was because it was a bad plan. They don't know it's a bad plan at the time they executed it. Well, what difference does that make? This is second-guessing and doing a de novo review. But it's an objective standard, a similar event beyond their control. What they knew or didn't know is not pertinent to that.  And the event beyond their control in this case is they picked the wrong victim. They don't know they picked the wrong victim. But it wasn't beyond their control. It was within their control. Well, it's what the event is is they picked the wrong person. So what's beyond their control is they just screwed up. But it doesn't mean that that guideline then gives them a three-level discount. So let's assume you're right about that. And then there's another part of this that you have to be about to complete all such acts. And I take it that is referring to the ultimate offense here, which would be robbing the business. Accessing DFI, yes. Accessing the business. It would be burglarizing technically. But, yes, accessing DFI. And they had the team ready to go. All they needed was to make the call and say, we have the keys or we have the code. And they would access DFI, presumably find an empty warehouse and steal the merchandise. Okay. I think the argument is made then that we're not necessarily about to complete this because even if they got the codes, there were still other things they had to go and do. How do you address that? I think that that's — it's a fair argument, but as far as they got in this unified plan, it was fairly substantial and it was enough to meet the guideline. But that's not what it says. It doesn't say substantial acts. It says all the acts that they believe necessary on their part for the successful completion. And they thought if they had — if this had worked and they had gotten the code, then they'd have to call somebody else and that person would have to get in a car and they'd have to go to this other place and the code would have to work and they'd have to go in. And so there was — it's not substantial. That's not the standard. Well, under the way this scheme worked, they had completed the most important part, which was the violence. They were trying to extract the code. The only thing remaining was to send the transport team to access the building. Right. I know you can say that way, but if you start talking about what it means to send a transport team, it means they have to be successful in contacting them, they have to be successful in starting the car, they have to be successful in finding the right place, they have to be successful in using the code. There are a bunch of steps that haven't happened, acts, that had — even if they had gotten the code, that had happened before they could have successful completion of the substantive offense. I disagree, Your Honor, and I think the district court got it right when it found — and this court is reviewing for clear error — that the factual impossibility did not negate the conspiracy's progression. How close was the hotel to the business? That's not in the record. And having been trial counsel, I believe in the government's brief I mentioned that it's close. I don't have that specific fact. It wasn't produced at trial. It was generally in the area from my memory, and it was — I know which hotel it is. It's off 80. It's the Granada Inn, and DFI is not around anymore. But it was relatively close, and that was part of why they picked that hotel, was they could have the team ready with, I believe, a U-Haul van at the ready. And moreover, after they got the code, they could have just said, oh, forget it, we're not doing this. I mean, the whole — what is the point of this? I mean, it may be helpful to talk about what is the point of this provision. It is essentially — well, I don't know. What is your understanding of what the point of it is? Why there's a three-point deduction for a conspiracy? It's a good question, Your Honor. And I think the courts have looked at this very fact-specific, as we are, and it's a fact-specific inquiry that defers to the district court's findings. And here, what my understanding, and I think the best sort of evaluation of what the purpose of the guideline is, Judge Posner and Dosen, and I think it's three main points. It's what the defendants believed was necessary to achieve success. No, no, that's not what I'm asking you. I'm asking you, why does this exist at all? Presumably because the guideline framers want to have a lesser guideline for inchoate crime than if they had completed it. And apparently, from the language here, they — and why do they want to do that? Because people may give up and never actually accomplish it. And that's better for the world, right? Presumably. Well, certainly not better for Mr. Wynn in this case. Well, I understand that. But that was — What Judge Posner says is basically it's degrees of how far a conspiracy or an attempt get. And so if it's just mere preparation, it's conversations, how far down the road. In Luchtman, it was a person who wanted to do a mass casualty event in New York and join ISIL. He had talked to some people. He had — I don't understand your reading of this because there's two parts of this, right? Yes, Your Honor. And the first part says completed all the acts, all. And the second part says complete all such acts. And you're basically trying to read this statute as having completed most of the acts. The second part does have other language that makes it so it doesn't have — they don't have to have completed all such acts as long as something breaks it as long as something out of their control, beyond their control, breaks it. But what your argument is trying to turn all such acts into something less than all such acts. Like you're trying to say substantially completed or something like that. But this doesn't have a substantial completion. It has all such acts. It does have less than all acts, but only if there's something out of their control. There's nothing about substantial completion here. So your argument doesn't work. It just doesn't work. The only way you win is if all such acts are just the acts on their part. You have that helpful language in the statute that you don't seem to be relying on. Or you win if something was beyond their control. But while you are focusing on substantially complete, you're walking into a cage with a tiger. You lose that on that argument. Yes, Your Honor. I see my time is up. Go ahead and respond if you want to. Well, I apologize if I've made the wrong argument, Your Honor. But I agree with what the Court said. Under either prong, the facts here meet the disqualification for the three-level discount. Thank you, Mr. Hitt. Mr. Jones, we'll hear two minutes from you. Thank you. One thing I'd like to say, Judge van Dyck, I'd like to address your question, having had a little time to think about it. The meaning, why the language, on their part? I think when you read the guideline, that clause of the guideline, on their part distinguishes something contingent on the actions of someone outside the conspiracy. On their part means the actions of the conspirators. So if you had a conspiracy that depended on the person showing up at 8 a.m. for work every day, and we're going to lay in wait for this guy who's showing up at 8 a.m., he misses his bus. That wouldn't be on their part. But on their part makes it contingent on all of the actions on the conspirators' part that they believe necessary. And in that sense, and I think this comes from reading the text and the commentary and the cases as well, it's ultimately a collective analysis. It's not going to be based on what one conspirator who had a minor role happened to think. Like, if there was a guy here who his job was to fill the van with gas, then go home. Well, he did everything that he thought on his part, but he didn't have any reason to think that the substantive offense was even attempted. But what about the other? I mean, if you look at the second, you may be right about the first part of this, but you still have to deal with the second part of the sentence, right, that talks about circumstances demonstrate that the conspirators were about to complete all such acts. I mean, here it seems like the most difficult thing was just getting the code. Once you had the code, you were good. And so why wouldn't we say that they were about to complete all such acts, meaning the ultimate taking of the computers from the business? Because I think they still had to – I wouldn't say that – I'd say that it seems clear to me driving – let's say they get the correct code, which they never did, and they knew it. They never thought they did. No conspirator thought they had the correct codes. Then they still had – it's still a substantial step or a number of steps to take the van and drive it to the warehouse to enter the building. If you have the right codes, you can. You could get caught pulling your van up to the building in the middle of the night and a patrol car pulls up. Or there's some other – there's a duplicate alarm system. They really don't have that. But, I mean, it seems like in the order of operations as to what could go wrong, the most difficult piece of this was torturing a human being to get information out of their mouth. And if that part of it is achieved, then you seem to have done the most difficult part of this. I think so. I think you've done the most complicated part, and that's why they failed at that point in their plan. But there were still a couple of steps that weren't completed. They weren't simply a no-brainer. They still needed some luck, and based on their planning skills, they probably made various mistakes as to the parts of their plan they never got to execute. Are there other cases out there that you would – are there other cases that you would point to as sort of ones that are most supportive of this part of your theory? I think the Lamb case from the Seventh Circuit from 2000 has a number of parallels. And other than that, the cases cited on my brief, certainly I don't have a case that's factually on point. In Martinez-Martinez, it's – I think that case is useful talking about are there any substantial steps remaining. And I think even if you say that they were 75 percent through with the Hobbs Act robbery, the fact that they hadn't even approached the warehouse, hadn't entered it, hadn't spirited away the interstate property, there's a few elements of the Hobbs Act that aren't met. The taking hasn't occurred, and the interstate element hasn't been met. I think those steps, even if they're on balance, not the majority of the crime, they're substantial. Okay. Let me see if my colleagues have additional questions for you. Well, I have one. Was the – the Hobbs Act robbery requires either committing or threatening physical violence or obstructing, delay, or affecting commerce or the movement of every article. Was the torture and so on charged as part of the Hobbs Act? With the what? The robbery? The getting of the code through violence. Was that the violence that was charged here? Yes. I believe that was the – I believe that constitutes the force element of the Hobbs Act robbery. I think that's correct. No, it was the second part of the Hobbs Act, not the first part about obstructing. The application of force, yeah. By what? The application of force, that element. Okay. I believe so. Thank you. Okay. Mr. Jones, hearing no more questions, I want to thank you and Mr. Hitt for your presentations this morning. This matter is submitted. Thank you.
judges: BERZON, BRESS, VANDYKE